# EDNA SANTIAGO, Appellant/Plaintiff
## v.
# VIRGIN ISLANDS HOUSING AUTHORITY, et al.,
## Appellees/Defendants

## S. Ct. Civil No. 2010-0010

## Supreme Court of the Virgin Islands

## July 31, 2012

257

259

LEE J. ROHN, ESQ., Rohn & Carpenter, LLC, St. Croix, USVI, *Attorney for Appellant.*

CAROL G. HURST, ESQ., Carol G. Hurst, P.C., St. Thomas, USVI, *Attorney for Appellee ABC Janitors of St. Croix, Inc.*

WILFREDO A. GÉIGEL, ESQ., Law Offices of Wilfredo A. Géigel, St. Croix, USVI, *Attorney for Appellee ABC Compounding Co., Inc.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and BRADY, *Designated Justice.*[1] SWAN, *Associate Justice*, concurring. BRADY, *Designated Justice*, concurring.

## OPINION OF THE COURT

(July 31, 2012)

HODGE, *Chief Justice*. Appellant Edna Santiago seeks reversal and remand of the Superior Court's November 3, 2007 Order granting

---

[1] Associate Justice Maria M. Cabret has been recused from this matter. The Honorable Julio A. Brady sits in her place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

summary judgment in favor of Appellee ABC Compounding Company, Inc. (ABC Compounding), and its June 11, 2008 Order granting the motion to dismiss filed by Appellee ABC Janitors of St. Croix, Inc. (ABC Janitors). For the reasons that follow, this Court affirms the Superior Court's order granting ABC Janitor's motion to dismiss and reverses and remands its order granting ABC Compounding's motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of two incidents that occurred on October 22 and 23, 2001, allegedly resulting in injuries to Santiago. Santiago alleges that on October 22, 2001, she slipped and fell in the bathroom of her Frederiksted, St. Croix apartment. The apartment is a part of a housing community operated and managed by Virgin Islands Housing Authority (VIHA). Santiago claims that she fell because sewage water drained into her apartment. Santiago contacted the management of the housing community the next day to report the incident. On October 23, 2001, VIHA sent Norman Stanley, a maintenance worker, to Santiago's residence to assist with the cleanup of the sewage and to unclog the sewer line. In order to unclog the sewer line, Stanley used a product that was later identified as "Red Hot Sewer Solvent." He poured some of the sewer solvent down the main sewer line, which was located outside of Santiago's back door. Upon contact with the water in the sewer pipes, the sewer solvent foamed and emitted a foul odor. Santiago stated that she closed the door, but the fumes had already permeated the apartment and had begun to irritate and burn Santiago's eyes, throat, nose, and face. As a result, Santiago alleges that she has suffered physical injuries, medical expenses, and pain and suffering.

On August 26, 2002, Santiago filed suit in the Superior Court alleging claims against VIHA and Taylor Labs, Inc. for the injuries she allegedly sustained on October 22 and 23, 2001. On January 30, 2003, VIHA responded to a request for interrogatories from Taylor Labs, which revealed that ABC Compounding, not Taylor Labs, was the manufacturer of the sewer solvent, and that ABC Janitors was the seller and distributor of the sewer solvent. This response was also served on Santiago. Based on this information, Santiago moved to amend her original complaint and substitute ABC Compounding for Taylor Labs. Santiago's motion to amend her complaint was granted on April 22, 2003, and ABC

Compounding became a party to the action while Taylor Labs was dismissed as a defendant. On June 13, 2003, VIHA filed a motion for leave to file a third party complaint against BC Engineering Supplies, Inc. (BC Supplies) because its records indicated that BC Supplies distributed the sewer solvent and was one company that had sold the sewer solvent to VIHA around the time of the incident involving Santiago. In response, Santiago moved to amend the first amended complaint and add BC Supplies as a defendant. The Superior Court granted both motions on August 18, 2003. On August 4, 2004, VIHA filed another motion for leave to file a third party complaint against ABC Janitors on the basis that ABC Janitors also sold the sewer solvent to VIHA. Santiago subsequently sought leave to file a third amended complaint adding ABC Janitors as a defendant on August 23, 2004. The Superior Court granted both motions on September 23, 2004.

On November 29, 2004, ABC Janitors moved to dismiss the claims against it, asserting that the two-year statute of limitations applicable to Santiago's claims, as imposed by title 5, section 31(5)(A) of the Virgin Islands Code, had expired before it was served with the third amended complaint. Santiago filed an opposition to the motion, arguing that the discovery rule applied and that the statute of limitations accrued in January 2003, when Santiago first learned that ABC Janitors may have contributed to the causation of her injuries. Alternatively, Santiago contended that the complaint against ABC Janitors related back to the filing date of the complaint against BC Supplies such that the applicable two year statute of limitation did not bar Santiago's claims against ABC Janitors. VIHA moved for partial summary judgment against Santiago on February 4, 2005, seeking to preclude any claims or judgments against VIHA in excess of the statutory mandatory limit of fifty thousand dollars ($50,000.00) pursuant to 29 V.I.C. § 87. BC Supplies also moved for summary judgment, claiming that it had never sold the sewer solvent. Santiago did not oppose BC Supplies' motion, and also moved to dismiss BC Supplies as a defendant. On September 7, 2005, ABC Compounding filed a motion for summary judgment arguing the claims against it were preempted by the Federal Hazardous Substances Act (FHSA). On September 22, 2005, ABC Janitors filed a motion for relief from the Superior Court's September 23, 2004 Order granting Santiago's motion for leave to file the second amended complaint. The relief requested by

ABC Janitors was essentially the same relief sought by its prior motion to dismiss.

The Superior Court held oral arguments on all pending motions on October 17, 2007. On November 3, 2007, the Superior Court entered a Memorandum Opinion and Order: 1) granting in part VIHA's motion for partial summary judgment; 2) finding that Santiago's claims against ABC Compounding were preempted by the FHSA, and granting ABC Compounding's motion for summary judgment; and 3) granting in part ABC Janitors' motion to dismiss as it related to the discovery rule, but allowing Santiago the opportunity to conduct discovery to determine whether Santiago's attempts to join ABC Janitors related back to the date of her filing against BC Supplies under Federal Rule of Civil Procedure 15(c)(1)(C). Santiago filed a motion for Rule 54(b) certification of the Superior Court's November 3, 2007 Memorandum Opinion and Order, and on March 13, 2008, ABC Janitors renewed its motion to dismiss. On June 11, 2008, the Superior Court granted ABC Janitors' motion to dismiss and denied Santiago's motion for Rule 54(b) certification.

Santiago settled her remaining claims against VIHA, and stipulated to its dismissal from the action on October 2, 2009. The Superior Court granted the dismissal of VIHA on January 4, 2010. Santiago filed her timely notice of appeal on January 21, 2010.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Title 4, section 32(a) of the Virgin Islands Code gives this Court "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). This matter involved multiple defendants and several orders of dismissal and summary judgment. However, the final order disposing of all claims occurred when the Superior Court granted the stipulated dismissal of Santiago's claims against VIHA on January 4, 2010. Accordingly, this Court possesses jurisdiction over Santiago's appeal. *See* V.I.S.CT.R. 5(a)(1).

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel,* 49 V.I. 322, 329 (V.I. 2007). The standard of review on an appeal from a grant of summary

judgment is *de novo. Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 127 (V.I. 2009). "When reviewing an order granting summary judgment, this Court is required to view the facts in the light most favorable to the opposing party, and in effect, perform the same test the Superior Court would have performed." *Id.* "The moving party can only prevail if it shows that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law." *Id.* To the extent its decision is not based on legal conclusions or factual findings, this Court reviews the Superior Court's denial of a motion for leave to amend a complaint for abuse of discretion. *See Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007).

### B. Santiago's Claims against ABC Compounding

Santiago contends that the Superior Court erred in holding that her common law negligence claims were preempted by the FHSA. Specifically, Santiago argues that the Superior Court erred in determining that the sewer solvent was a "misbranded hazardous substance" and subject to the FHSA. Alternatively, Santiago argues that the Superior Court should not have granted ABC Compounding's motion for summary judgment because in her opposition brief to ABC Compounding's motion to dismiss, Santiago asserted a claim that the sewer solvent's label did not comply with the requirements of the FHSA.[2]

### 1. The sewer solvent was a "hazardous substance" subject to the labeling requirements of the FHSA

The FHSA defines "hazardous substances" as:

> Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat, or other means, if such substances or mixture of substances may

---

[2] Although Santiago may have asserted that the sewer solvent's label did not comply with the requirements of the FHSA in her opposition brief to ABC Compounding's motion to dismiss, Santiago's complaint failed to state any such claim. Santiago, therefore, did not adequately and properly state a claim under the FHSA according to the general rules of pleading set forth in Rule 8 of the Federal Rules of Civil Procedure. *See* SUPER. CT. R. 7 ("The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Civil Procedure . . . .").

cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children.

15 U.S.C. § 1261(f)(1)(A). The FHSA requires all hazardous substances "intended, or packaged in a form suitable, for use in the household or by children" to bear a label containing specific information and warnings. *See* 15 U.S.C. § 1261(p)(1); 15 U.S.C. § 1262(b). The phrase "hazardous substances intended, or packaged in a form suitable, for use in the household" is more clearly defined by 16 C.F.R. § 1500.3(c)(10)(i), which states:

> Hazardous substances intended, or packaged in a form suitable, for use in the household means any hazardous substance, whether or not packaged, that under any customary or reasonably foreseeable condition of purchase, storage, or use may be brought into or around a house, apartment, or other place where people dwell, or in or around any related building or shed including, but not limited to, a garage, carport, barn, or storage shed. The term includes articles, such as polishes or cleaners, designed primarily for professional use but which are available in retail stores, such as hobby shops, for nonprofessional use. Also included are items, such as antifreeze and radiator cleaners, that although principally for car use may be stored in or around dwelling places. The term does not include industrial supplies that might be taken into a home by a serviceman. An article labeled as, and marketed solely for, industrial use does not become subject to this act because of the possibility that an industrial worker may take a supply for his own use. Size of unit or container is not the only index of whether the article is suitable for use in or around the household; *the test shall be whether under any reasonably foreseeable condition of purchase, storage, or use the article may be found in or around a dwelling.*

(emphasis added). Hazardous substances that do not bear a label in accordance with the requirements of 15 U.S.C. § 1261(p)(1) shall be deemed to be a "misbranded hazardous substance," and the introduction of such items into interstate commerce is prohibited. *See* 15 U.S.C. § 1262(b).

265

The first question that this Court must answer is whether the sewer solvent is a hazardous substance subject to the FHSA.[3] As discussed above, the test to determine whether a product is subject to the FHSA is whether it is reasonably foreseeable that the product will be available for household use. *See* 16 C.F.R. § 1500.3(c)(10)(i). Santiago argues that the sewer solvent is not a hazardous substance intended, or packaged in a form suitable, for use in the household, but rather industrial supplies which are not covered by the FHSA. In support of this claim, Santiago points to the label of the sewer solvent which states that it "is designed exclusively for industrial and institutional use by trained personnel." Santiago also points to the fact that VIHA was responsible for purchasing the sewer solvent and bringing it to her house — not an individual consumer. While the term "hazardous substance" does not include industrial supplies that might be taken into a home by a serviceman, the factors cited by Santiago are not determinative of whether the product is subject to the FHSA.

In an analogous case, *Canty v. Ever-Last Supply Co.*, 296 N.J. Super. 68, 685 A.2d 1365, 1368 (1996), the court craftily explained the relevant factors in determining whether a substance is hazardous. There, the issue before the court was whether the FHSA governed a lacquer sealant product.[4] *Id.* The "[p]laintiffs contend[ed] . . . that Lacquer Seal [was] a professional product sold primarily to tradespeople and that it therefore is not a product intended for household use." *Id.* at 1369. The plaintiffs also argued "that by labeling the lacquer container 'For Professional Use Only,' the defendants intended the product for industrial application, not household use; thus, Lacquer Seal would not be covered by the FHSA." *Id.* at 1369-70. The court rejected these arguments and held that "the test is not what the manufacturer intends, but whether it is

---

[3] It appears that the Superior Court misused the term "misbranded hazardous substance." A misbranded hazardous substance is a hazardous substance — as defined by the FHSA — which fails to meet the cautionary labeling requirements under 15 U.S.C. § 1261(p) and 15 U.S.C. § 1262(b). The Superior Court's Memorandum Opinion and Order focused on whether the sewer solvent was subject to the cautionary labeling requirements of the FHSA as opposed to whether the sewer solvent's label actually met those requirements. Accordingly, we will construe the Superior Court's use of the words "misbranded hazardous substance" to mean "hazardous substance subject to the labeling requirements of the FHSA."

[4] Canty was the operator/owner of a hardwood floor refinishing business, and the lacquer sealer product used by Canty is a product for use with hardwood floors as a protective sealant.

reasonably foreseeable to the manufacturer that the product will be available for household use." *Id.* at 1370. The focus, the court held, is on "whether the product, through its normal distribution scheme, is made available to the ordinary consumer. The fact that the defendants' product is labeled 'For Professional Use Only,' does not determine the issue. The important consideration is whether the product could be purchased by the average consumer for household use." *Id.* Ultimately the court determined that

> the evidence reveals that Ever-Last, one of the stores where Lacquer Seal is sold, is open to the general public as well as tradespeople. Any Ever-Last customer, whether a professional or not, may purchase Lacquer Seal for household use. Where, as here, there is no evidence to show that the manufacturer, wholesaler, or retailer of a hazardous substance sought to limit sales of the product to industrial or professional users, it is reasonably foreseeable that household consumers will have access to the product. The lack of restrictions on who may purchase Lacquer Seal, along with its obvious utility to an average household consumer as a wood floor sealant make it a product "intended, or packaged in a form suitable, for use in the household" within the meaning of the regulations. Accordingly, Lacquer Seal is a product governed by FHSA.

*Id.* at 1370-71. *Canty* provides a clear analysis for determining the applicability of the FHSA, and we will apply it to the present case.

The Superior Court held that the sewer solvent is a "substance which, 'under any customary or reasonably foreseeable condition of purchase, storage, or use may be brought into or around a house, apartment, or other place where people dwell,' under 16 C.F.R. § 1500.3(c)(10), as demonstrated by its use in this case." Although the Superior Court's reasoning was vague and unclear, its ultimate determination that the sewer solvent is a hazardous substance subject to the labeling requirements of the FHSA was correct under the analysis articulated in *Canty*. At the October 17, 2007 Oral Arguments, ABC Compounding asserted that the sewer solvent is available to consumers for purchase over the internet and at stores in Puerto Rico and stateside that deal in chemicals for plumbing and plumbing devices. Furthermore, Santiago presented no evidence to show that ABC Compounding sought to limit sales of the sewer solvent to industrial or professional users.

Based on the lack of restrictions on who may purchase the sewer solvent, the Superior Court was justified in determining that it is reasonably foreseeable that household consumers will have access to the product. Therefore, the Superior Court did not err in holding that the sewer solvent was "intended, or packaged in a form suitable, for use in the household" within the meaning of the regulations, and thus subject to the labeling requirements of the FHSA.

## 2. *Santiago's common law claims are not preempted by the FHSA*

■■ The FHSA was enacted in 1960 to " 'provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use.' " *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 109 (2d Cir. 2001) (quoting House Comm. on Interstate and Foreign Commerce, Federal Hazardous Substances Labeling Act, H.R. Rep. No. 1861, 86th Cong., 2d Sess. 2 (1960), reprinted in 1960 U.S.C.C.A.N. 2833, 2833). When initially enacted, the FHSA did not mention federal preemption, but the 1966 Amendments to the Act added a provision to preempt any state cause of action that seeks to impose a labeling requirement different from the requirements in the FHSA or the regulations promulgated under the FHSA. *See* 15 U.S.C. § 1261 note (b)(1)(A) ("[I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under [this Act] . . . no State . . . may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness unless such cautionary labeling requirement is identical to the labeling requirement under [this Act]."). Published authority interpreting the FHSA's preemption provision, however, is sparse. For that reason, to supplement our analysis of the FHSA's preemption provision we turn to the extensive body of case law interpreting a parallel preemption provision under the Federal Insecticide, Fungicide, and Rodenticide Act[5] (FIFRA).[6] We, like several other courts,

---

[5] 7 U.S.C. §§ 136 *et seq.*

[6] *Compare* 7 U.S.C. § 136v(a) ("A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this [Act]."), *and* 7 U.S.C. § 136v(b) ("State[s] shall not impose or continue in effect any requirements for labeling or packaging in addition to or

find the FIFRA's preemption language similar to that of the FHSA and believe that cases interpreting that clause may provide guidance in construing the analogous FHSA provision. *See Comeaux v. Nat'l Tea Co.*, 81 F.3d 42, 43-44 (5th Cir. 1996) (holding the FHSA and the FIFRA have "almost identical preemptive provisions"); *Nat'l Bank of Commerce of El Dorado v. Kimberly-Clark Corp.*, 38 F.3d 988, 993 (8th Cir. 1994) (stating that the FHSA preemption language is essentially identical to that of the FIFRA); *Moss v. Parks Corp.*, 985 F.2d 736, 740 n.3 (4th Cir. 1993) ("[t]he preemption issues arising under FHSA are identical to those arising under FIFRA." (quoting *Chemical Specialties Mfg. Ass'n Inv. v. Allenby*, 958 F.2d 941, 945 (9th Cir. 1992))). With that in mind we turn to the FHSA's preemption clause.

■ The plain language of the FHSA clearly preempts any state cause of action that seeks to impose different labeling requirement than those delineated in the Act. *See Milanese*, 244 F.3d at 109; *Comeaux*, 81 F.3d at 44; *Moss*, 985 F.2d at 740; *Pennsylvania General Ins. Co. v. Landis*, 96 F. Supp. 2d 408, 414-15 (D.N.J. 2000), *aff'd*, 248 F.3d 1131 (3d Cir. 2000); *Kirstein v. W.M. Barr & Company, Inc.*, 983 F. Supp. 753, 761 (N.D. Ill. 1997), *aff'd*, 159 F.3d 1065 (7th Cir. 1998). "[H]owever, a common law tort action based on failure to warn may be brought for noncompliance with the [FHSA's] labeling requirements." *Mattis v. Carlon Elec. Products*, 295 F.3d 856, 862 (8th Cir. 2002). *See Milanese*, 244 F.3d at 109-10 ("[A] state cause of action alleging non-compliance with the FHSA would *not* be pre-empted by the Act." (citing *Torres Rios v. LPS Labs., Inc.*, 152 F.3d 11, 13 (1st Cir. 1998); *Moss*, 985 F.2d at 740; *Landis*, 96 F. Supp. 2d at 415; *Kirstein*, 983 F. Supp. at 761)); *id.* at 110 ("Although there is no federal private right of action under the FHSA, a state negligence claim lies for failure to comply with the federal, FHSA-mandated labeling requirements.") (internal citations omitted). This conclusion is further supported by the United States Supreme Court's interpretation of the FIFRA's similar preemption provision. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 444, 125 S. Ct. 1788,

different from those required under this [Act]."), *with* 15 U.S.C. § 1261 note (b)(1)(A) ("[I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under [this Act] . . . no State . . . may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness unless such cautionary labeling requirement is identical to the labeling requirement under [this Act].").

1798, 161 L. Ed. 2d 687 (2005). In Bates, the Supreme Court held that for a common law cause of action to be preempted by the FIFRA, "it must impose a labeling or packaging requirement that is '*in addition to or different from* those required under this subchapter.'" *Id.* (emphasis in original). Moreover, the Court noted that in evaluating whether a particular cause of action would impose additional or different labeling requirements, a "state law need not explicitly incorporate FIFRA's standards as an element of a cause of action in order to survive pre-emption." *Id.* at 447, 125 S. Ct. at 1800. "In undertaking a pre-emption analysis at the pleadings stage of a case, a court should bear in mind the concept of equivalence. To survive pre-emption, the state-law requirement need not be phrased in the *identical* language as its corresponding FIFRA requirement . . . ." *Id.* at 454, 125 S. Ct. at 1804 (emphasis is original).

▮ The Supreme Court in *Bates* also held that common law tort claims that do not involve labeling or packaging requirements are not preempted by the FIFRA. *Id.* at 444, 125 S. Ct. at 1798. In order for a common law cause of action to be preempted by the FIFRA, it must impose "a requirement '*for labeling or packaging*'; **rules governing the design of a product, for example, are not pre-empted**." *Id.* (italics in original; bolding added). The Court elaborated on this point, stating:

> Rules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for "labeling or packaging." None of these common-law rules requires that manufacturers label or package their products in any particular way. Thus, petitioners' claims for *defective design, defective manufacture*, negligent testing, and breach of express warranty are not pre-empted.

*Id.* (emphasis added). With these principles in mind, we turn to Santiago's claims against ABC Compounding.

▮ In her complaint, Santiago asserts claims against ABC Compounding for: 1) negligently failing to adequately train and instruct the users of Red Hot Sewer Solvent on its proper application and use; 2) negligently failing to adequately mark and identify on its container the

proper use of Red Hot Sewer Solvent; 3) negligently failing to adequately mark and identify on its container the measures that should be taken to protect the public and occupants of residences where it is used against its dangers; 4) defective product; and 5) defectively designed or manufactured product. Santiago also broadly alleges that the sewer solvent "failed to contain proper warnings and conditions for its use." Beginning with her claims for 4) defective product and 5) defectively designed or manufactured product, it is clear that they do not involve the imposition of labeling or packaging requirements. As such, we find that these claims are not preempted by the FHSA. *See Bates*, 544 U.S. at 444, 125 S. Ct. at 1798. The Superior Court therefore erred in granting ABC Compounding's motion for summary judgment.

■ ■ Santiago's remaining claims are that ABC Compounding 1) negligently failed to adequately train and instruct the users of Red Hot Sewer Solvent on its proper application and use, 2) negligently failed to adequately mark and identify on its container the proper use of Red Hot Sewer Solvent, and 3) negligently failed to adequately mark and identify on its container the measures that should be taken to protect the public and occupants of residences where it is used against its dangers, as well as her broad assertion that the sewer solvent fails to contain proper warnings and conditions for its use.[7] Unlike her claims for defective product and defectively designed or manufactured product, these claims clearly involve the imposition of labeling requirements. However, it is not clear whether these claims impose labeling requirements different from the requirements embodied in the FHSA or whether they allege non-compliance with the FHSA's labeling requirements. As noted above, "a state cause of action alleging non-compliance with the FHSA would *not* be pre-empted by the Act." *See Milanese*, 244 F.3d at 109-10. And a complaint is not required to explicitly allege that a product's label did not comply with the FHSA's labeling requirements, as long as it uses equivalent language indicating as much.[8] *See Bates*, 544 U.S. at 454,

---

[7] Each of these claims can broadly be classified as failure to warn claims.

[8] Santiago claims that ABC Compounding 1) negligently failed to adequately train and instruct the users of Red Hot Sewer Solvent on its proper application and use, 2) negligently failed to adequately mark and identify on its container the proper use of Red Hot Sewer Solvent, and 3) negligently failed to adequately mark and identify on its container the measures that should be taken to protect the public and occupants of residences where it is used

271

125 S. Ct. at 1804. Accordingly, since it is not clear whether these claims impose labeling requirements different from the requirements embodied in the FHSA or whether they allege non-compliance with the FHSA, we will remand this issue to the Superior Court to determine whether Santiago's failure to warn claims are preempted by the FHSA. *See Richards v. Home Depot, Inc.*, 456 F.3d 76, 77 (2d Cir. 2006) ("If the product complies with the labeling requirements of the FHSA, plaintiff's failure-to-warn claims are preempted; otherwise, the claims can go forward.").

### C. Santiago's Claims against ABC Janitors

Santiago argues that the Superior Court erred in granting ABC Janitors' motion to dismiss based on its determination that the applicable two-year statute of limitations had expired.[9] Specifically, Santiago claims that under the discovery rule, the two-year statute of limitations accrued on January 30, 2003, when Santiago first learned that ABC Janitors may have contributed to the cause of her injuries. Alternatively, Santiago contends that the complaint against ABC Janitors related back to the complaint filed against BC Supplies such that the applicable two-year statute of limitation imposed by 5 V.I.C. § 31(5)(A) did not bar Santiago's claim against ABC Janitors.

### 1. *The discovery rule did not toll the two-year statute of limitations on Santiago's claims*

In order to determine whether Santiago's claims against ABC Janitors are barred by the two-year statute of limitations for personal

---

of its dangers, as well as her broad assertion that the sewer solvent fails to contain proper warnings and conditions for its use. And under 15 U.S.C. § 1263(a), a manufacturer violates the FHSA if it "introduc[es] into interstate commerce . . . any misbranded hazardous substance." A hazardous substance is "misbranded" if its packaging or labeling "is in violation of an applicable regulation issued pursuant to [this Act] or if such substance . . . fails to bear a label — (1) which states conspicuously . . . (E) an affirmative statement of the principal hazard or hazards, such as . . . 'Vapor Harmful,' 'Causes Burns,' 'Absorbed Through Skin,' or similar wording descriptive of the hazard [and] (F) precautionary measures describing the action to be followed or avoided . . . ." 15 U.S.C. § 1261(p)(1). Thus, if Santiago can prove these claims by showing that the sewer solvent did not comply with the FHSA's labeling requirements, then her claims would not be preempted by the FHSA.

[9] The Motion to Dismiss and Motion for 60(b) Relief by ABC Janitors both seek the same relief: dismissal of Santiago's action against ABC Janitors on statute of limitations grounds.

injury actions, this Court must first determine when those claims accrued, commencing the running of the statute of limitations period. "Once a cause of action has accrued and the statutory period for bringing the action has expired, an injured party is barred from bringing suit unless the statute of limitations has been tolled." *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991). The discovery rule tolls the statute of limitations when, despite the exercise of due diligence, the injury or its cause is not immediately evident to the victim. *See Joseph v. Hess Oil*, 867 F.2d 179, 182 (3d Cir. 1989). Under the discovery rule, the focus is not on "the plaintiff's actual knowledge, but rather 'whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff.' " *Bohus*, 950 F.2d at 925 (quoting *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 711 (3d Cir. 1981)). "To demonstrate reasonable diligence, a plaintiff must establish[] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006) (internal quotation marks omitted) (alterations in original).

The discovery rule is not applicable to the two-year statute of limitations on Santiago's claims against ABC Janitors. In her complaint, Santiago asserts that she witnessed Stanley open a bucket of Red Hot Sewer Solvent and pour its contents into a sewer pipe outside her home. Santiago further claims that upon inhaling the fumes from the sewer solvent her eyes, nose and throat began to burn; she started vomiting; and she sustained physical injuries. Based on her own assertions, Santiago was both aware of her alleged injures and their cause on the date they occurred, October 23, 2001. Furthermore, VIHA served interrogatory responses on Santiago in January 2003, indicating that ABC Janitors was the supplier of the sewer solvent. Despite this information, Santiago took no action to add ABC Janitors as a party until August 2004, when Santiago first attempted to amend her complaint to add ABC Janitors as a defendant, and Santiago's amended complaint was not served on ABC Janitors until September 2004. Therefore, Santiago's claims against ABC Janitors began to accrue on October 23, 2001, and because Santiago's claims against ABC Janitors were not filed until August 2004 — more than two years after her claims accrued and the limitation period started to run — Santiago's claims are barred by the two-year statute of limitations. *See* 5 V.I.C. § 31(5)(A).

In support of her claim, Santiago relies on *In re Tutu Wells Contamination Litigation*, 909 F. Supp. 980 (D.V.I. 1995). Based on the District Court's holding in *In re Tutu Wells*, Santiago argues that the discovery rule tolled the statute of limitations on her claims against ABC Janitors until January 2003, when VIHA's interrogatory responses identified ABC Janitors as the supplier of the sewer solvent. Santiago's reliance on *In re Tutu Wells*, however, is misguided.[10] First, the court in *In re Tutu Wells* adopted a narrow "environmental discovery rule" which is only applicable to "Virgin Islands' common law tort claims premised on environmental contamination," and which defers the running of the applicable statutory period until a plaintiff, through the exercise of reasonable diligence, can obtain critical facts necessary to indicate that the actions or inactions of a particular party could have been a cause of the injury. *In re Tutu Wells*, 909 F. Supp. at 986. In its holding, the District Court found that the environmental discovery rule "is dictated in the relatively limited context of environmental torts" because

> the various harms and injuries arising from environmental contaminants are often slow to arise given the latent nature of many such contaminants. Understandably, this delay creates difficulties in determining the actor responsible for any harm resulting from those contaminants. In addition, limitations in scientific capabilities often hinders a determination of who may have caused specific contamination.

*Id.* at 986-87. Moreover, in reaching its decision to adopt the environmental discovery rule, the District Court relied on *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985), which held:

> [T]he statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress. . . . Once the injured party is put on

---

[10] Although this Court may find the District Court's holding in *In re Tutu Wells* persuasive, we are not required to follow the decisions of federal tribunals interpreting local Virgin Islands law. As such, "decisions of our predecessor court, the Appellate Division of the District Court of the Virgin Islands, are not binding on us." *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 403 n.7 (V.I. 2008). Nor are the Third Circuit's interpretations of Virgin Islands local law binding precedent. *In re People of the V.I.*, 51 V.I. 374, 389 n.9 (V.I. 2009).

notice, the burden is upon him to determine within the limitations period whether any party may be liable to him.

As noted above, Santiago was immediately aware of both her injuries and their cause on October 23, 2001, the date they occurred. The injuries she sustained were also in no way related to any type of environmental contamination. The environmental discovery rule is therefore not applicable to Santiago's claims.

### 2. *The complaint against ABC Janitors did not relate back to the complaint filed against BC Supplies*

 Superior Court Rule 8 governs amendments to pleadings in Superior Court proceedings. Pursuant to Rule 8,

> The court may amend any process or pleading for any omission or defect therein, or for any variance between the complaint and the evidence adduced at the trial. If a party is surprised as a result of such amendment, the court shall adjourn the hearing to some future day, upon such terms as it shall think proper.

SUPER. CT. R. 8. Superior Court Rule 8, however, does not identify the legal standard that governs the relation back of amendments to pleadings.[11] To interpret the local enactment and determine the legal standard that should govern amendments, we will consider case law interpreting Federal Rule of Civil Procedure 15(c), which contains language similar to Superior Court Rule 8. *See H&H Avionics, Inc. v. V.I. Port Auth.*, 52 V.I. 458, 461 (V.I. 2009). The provisions now set forth in Federal Rule of Civil Procedure 15(c)(1)(C) "can ameliorate the running of the statute of limitations on a

---

[11] Superior Court Rule 7 provides that "[t]he practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Civil Procedure." SUPER. CT. R. 7. This Court has held, however, that, when a Superior Court rule governs the same subject matter as a federal rule, the federal rule cannot apply to Superior Court proceedings pursuant to Superior Court Rule 7 when application of the federal rule would render the Superior Court rule "wholly superfluous." *See Corraspe v. People*, 53 V.I. 470, 482-83 (V.I. 2010). Accordingly, pursuant to this Court's decision in *Corraspe*, Superior Court Rule 8, and not Federal Rule of Civil Procedure 15, should govern amendments to complaints, even if Superior Court Rule 8 provides a less comprehensive framework than Federal Rule of Civil Procedure 15. However, since Superior Court Rule 8 does not address the standard for the relation back of amendments, we may consider the doctrines developed under the federal rule in determining this issue.

claim by making the amended claim relate back to the original, timely filed complaint." *Singletary v. Pennsylvania Dept. of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (citing *Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 (3d Cir.1995)). Rule 15 provides in pertinent part:

> An amendment of a pleading relates back to the date of the original pleading when:
>
> . . . .
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if [the claim against the newly named defendants arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading] and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1). Thus, Rule 15(c)(1)(C) delineates

> three distinct prerequisites for an amendment to relate back to the original complaint: (1) the claims in the amended complaint must arise out of the same occurrences set forth in the original complaint, (2) the party to be brought in by amendment must have received notice of the action within 120 days of its institution, and (3) the party to be brought in by amendment must have known, or should have known, that the action would have been brought against the party but for a mistake concerning its identity. Once these requirements are satisfied, Rule 15(c) instructs that the "amendment . . . relates back to the date of the original pleading."

*Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006) (internal citations omitted).

 ABC Janitors does not dispute that the first condition of Rule 15(c)(1)(C) has been met — that the claims against it arose out of the same conduct and occurrence set forth in the original pleading. Instead, the controversy in this case involves whether the second and third

276

conditions were met. *See* FED. R. CIV. P. 15(c)(1)(C)(i)-(ii). The requirements of Rule 15(c)(1)(C)(i)-(ii) must be met "within the period provided by Rule 4(m) for service of the summons and complaint," FED. R. CIV. P. 15(c)(1)(C), which is "within 120 days after the complaint is filed," FED. R. CIV. P. 4(m). Under Rule 15(c)(1)(C)(i), the newly named party must have "received such notice of the action that it will not be prejudiced in defending on the merits." This condition "has two requirements, notice and the absence of prejudice, each of which must be satisfied." *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 458 (3d Cir. 1996). The third condition is that the newly named party must have known, or should have known that "but for a mistake" made by the plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly named party in the first place. FED. R. CIV. P. 15(c)(1)(C)(ii).

For purposes of the relation back doctrine, notice can be "actual, constructive, or imputed." *Singletary*, 266 F.3d at 195. Based on the record, however, there is no evidence that ABC Janitors had received actual, constructive, or imputed notice of Santiago's claims until August 2004. Santiago filed her original complaint against VIHA and Taylor Labs, Inc. on August 26, 2002. She later amended her complaint to add BC Supplies as a defendant on August 18, 2003. Then, in August 2004, ABC Janitors received a third-party complaint from VIHA naming it as a defendant in the action, and in September 2004, ABC Janitors received an amended complaint from Santiago naming it as a defendant. With the exception of VIHA's August 2004 third-party complaint and Santiago's September 2004 amended complaint — which were both received by ABC Janitors more than 120 days after Santiago's filing of the original complaint — there is no evidence in the record that indicates that ABC Janitors received any notice of Santiago's claims.

Santiago contends that the Superior Court should have assumed, first, that ABC Janitors and VIHA had a close business relationship, and second, that VIHA notified ABC Janitors of the institution of this action. This contention, however, has no factual or evidentiary support. Furthermore, even if this Court accepted these two assumptions as true, the mere fact that VIHA was a party to a lawsuit involving its use of Red Hot Sewer Solvent is not sufficient to establish that ABC Janitors knew or should have known that but for a mistake made by Santiago, the action would have been brought against it in the first place.

Alternatively, Santiago argues that she did not have an opportunity to conduct discovery to determine whether ABC Janitors had received notice within 120 days of the filing of the original complaint, and the Superior Court's denial of Santiago's request to conduct discovery was an abuse of discretion. This argument is not supported by the record. In the Superior Court's Memorandum Opinion and Order entered November 3, 2007, it denied ABC Janitors' motion to dismiss as it related to the relation back doctrine, and allowed Santiago the opportunity to conduct discovery to determine whether ABC Janitors received notice of her claims. Discovery was extended until April 30, 2008, and on June 11, 2008 — after allowing Santiago six months to conduct discovery — the Superior Court dismissed Santiago's claims against ABC Janitors because "[t]here is no evidence in the record . . . that ABC Janitors received notice of the pendency of this action within the period of time required by Federal Rule of Civil Procedure 15(c)(1)(C)." Thus, we also reject Santiago's claim that she was not afforded an opportunity to conduct discovery to determine whether ABC Janitors received notice of her claims, and the Superior Court's determination to grant ABC Janitors' motion to dismiss is accordingly affirmed.[12]

### III. CONCLUSION

The Superior Court correctly determined that the Red Hot Sewer Solvent was a "hazardous substance" subject to the labeling requirements of the FHSA, but erred in granting ABC Compounding's motion for summary judgment. The Superior Court correctly determined that the running of the statute of limitations against Santiago's claims against ABC Janitors was not tolled by the discovery rule, nor did the commencement of those claims for limitation purposes relate back to the filing date of the complaint against BC Supplies. Accordingly, the Superior Court did not err in holding that Santiago's claims against ABC Janitors were barred by the two-year statute of limitations. Therefore, we reverse and remand the Superior Court's order granting ABC Compounding's motion for summary judgment, and affirm its order granting ABC Janitors' motion to dismiss.

---

[12] In its brief, ABC Janitors also argues that it is entitled to summary judgment pursuant to the FHSA. Because Santiago's claims against ABC Janitors are barred by the two-year statute of limitations, this Court does not need to address this argument.

SWAN, *Associate Justice*, concurring. Appellant alleges several tort claims against Appellees for injuries she sustained because of the use of the chemical, Red Hot Solvent, in proximity to her home and further alleges a claim based upon Appellees' use, labeling and distribution of the same chemical. The trial court concluded that some of Appellant's claims were preempted by federal law. I conclude that other claims were not preempted because Appellant asserted several tort claims based on state law, such as negligence and product liability. I would reverse in part the trial court's order and remand the case for further proceedings consistent with this concurring Opinion.

One Appellee sought dismissal of Appellant's claim because it was time-barred under the statute of limitations for tort suits. I would affirm the trial court's dismissal of Appellant's claim based upon the applicable two-year statute of limitations.

## I. FACTS AND PROCEDURAL HISTORY

Edna Iris Santiago ("Santiago") is a resident of Williams Delight, a housing community on St. Croix that is owned and operated by the Virgin Islands Housing Authority ("VIHA"). (J.A. Vol. I at 113, 279.) Beginning in September 2001, Santiago experienced periodic problems with the community's sewage system which caused waste to permeate into her residence. (*Id.* at 114-15, 285.) Therefore, Santiago contacted VIHA's management, which dispatched its employees to Williams Delight to rectify the sewage problem. (*Id.* at 114.) However, unbeknownst to Santiago, in the early morning hours of October 22, 2001, sewage again seeped into her residence. (*Id.*) The same morning Santiago awoke and proceeded to her bathroom in the dark. (*Id.* at 115.) Unaware the seepage had entered her bathroom, Santiago slipped on the seepage of waste and fell. (*Id.* at 114-15.) She immediately began to scream. (*Id.*) Santiago's male friend heard her screaming and rushed to her aid. (*Id.*) As a result of the fall, Santiago injured her knee, back, hip and head. (*Id.* at 126.)

Thereafter, Santiago contacted VIHA and reported the incident to Mr. Gerard, the emergency manager on duty. (*Id.* at 164, 66.) Later that day Santiago also reported the incident to Pamela Samuel, one of the housing managers. (*Id.* at 115-16, 164.) Consequently, on October 23, 2001, Norman Stanley ("Stanley") was dispatched to Santiago's residence to investigate the sewage problem. (*Id.* at 116.) Stanley arrived at Santiago's residence with an·assistant. (*Id.* at 118.) Neither Stanley nor his

assistant wore a mask, gloves or other protective clothing. (*Id.* at 122, 157, 173, 200-01.) On prior occasions when Stanley had been dispatched to Santiago's residence, Santiago had observed Stanley using a "snake" tool to unclog blockages that had caused sewage to intrude into her residence. (*Id.* at 116.) However, on October 23, 2001, while standing in her kitchen with the door open, approximately three feet from Stanley and the main sewer line, Santiago observed Stanley using a different tool to clear the blockage in the sewer line. (*Id.* at 116, 120, 204.)

After greeting Santiago, but without prior explanation or warning to Santiago, Stanley approached the main sewer pipe, stood over it, and poured two scoops of a granular substance from a bucket into the main sewer pipe. (*Id* at 119.) As Stanley poured the second scoop into the sewer, Santiago read the words "Red Hot Solvent" on the bucket's label. (*Id.* at 144.) In her deposition, Santiago described what occurred after Stanley started pouring the liquid into the main sewer pipe:

> So I look and I smell this bad odor. So I tell him, you know, this thing smell bad. To my knowledge, he never did that. When he continue pouring, I tell him this smell bad.
>
> He told me to close the door, but by the time I start to feel this thing in my body starting to itch, burn, I couldn't breathe. I close my door. He tell me close my door. I run quickly close my windows. I was gasping for breath. And as I was coming out, I started to throw up, I started to vomit.

(J.A. Vol. I at 116-17.) Santiago hastily exited her residence through the front door where her son came to her aid and comforted her. (*Id.* at 123.) Santiago's son hurriedly transported her to a doctor's office for medical treatment. (*Id.* at 117, 183.)

Upon Santiago's arrival at the office of Dr. Wilbert Williams (*id.* at 125), Dr. Williams performed a medical examination, which revealed that Santiago had sustained chemical burns inside her throat. (*Id.* at 208.) Dr. Williams also wrapped Santiago's ankle and prescribed medication for her. (*Id.* at 125.) Essentially, Santiago sustained chemical burns and other physical discomfort as a result of her exposure to the chemical agent used by Stanley earlier that day. She continues to experience pain, periodic rashes, headaches, blurred vision, dry mouth, difficulty sleeping and other ailments, all of which Santiago attributes to her exposure to the

Red Hot Solvent chemical. (*Id.* at 134-35, 142.) Additionally, Santiago sought medical treatment from Dr. Marlon Williams and at least five other doctors for various ailments purportedly caused by her exposure to the chemical agent used by Stanley. (*Id.* at 130, 137.)

On August 22, 2002, Santiago filed a three-count Complaint against the VIHA and Taylor Labs, Inc. in the Superior Court of the Virgin Islands. (*Id.* at 31; J.A. Vol. II at 659.) On June 10, 2003, VIHA filed a Motion for Leave to Serve Third-Party Complaint against BC Engineering Supplies, Inc. ("BC Supplies"). (J.A. Vol. II at 578-79.) On July 10, 2003, Santiago filed a four-count Second Amended Complaint naming the VIHA, A.B.C. Compounding Company, Inc. ("A.B.C. Compounding") and BC Supplies as defendants. (J.A. Vol. II at 573.) On August 18, 2003, the trial court granted both the VIHA's Motion for Leave to File a Third-Party Complaint against BC Supplies and Santiago's Motion to Amend her Complaint to add BC Supplies as a defendant.

VIHA invoices state that ABC Janitors of St. Croix ("ABC Janitors") is the vendor of the Red Hot Solvent. (J.A. Vol. II at 566.) The VIHA's Responses to Taylor Labs Interrogatories reveals, and Santiago admits, that on January 31, 2003 VIHA disclosed that ABC Janitors was the "distributor or seller" of Red Hot Solvent. (*Id.* at 535, 670; *see also* Br. of Appellant at 25.) On August 5, 2004, the VIHA filed a Motion for Leave to Serve Third-Party Complaint against ABC Janitors. (J.A. Vol. II at 556.) On August 12, 2004, the trial court granted VIHA's Motion. (*Id.* at 555.) On August 19, 2004, VIHA filed its Third-Party Complaint against ABC Janitors. (J.A. Vol. I at 23.)

On August 23, 2004, after VIHA filed its Third-Party Complaint against ABC Janitors, Santiago filed a four-count Third Amended Complaint against defendants VIHA, A.B.C. Compounding, BC Supplies and ABC Janitors. (J.A. Vol. II at 543.) Count I of Santiago's Third Amended Complaint alleges negligence; Count II alleges negligence and defective product, defective design and defective manufacturing; Count III alleges failure to warn and failure to give proper instructions in the use of Red Hot Solvent; and Count IV alleges reckless disregard of Santiago's rights and interests. (*Id.* at 547-48.) In its Answer to Santiago's Third-Party Complaint, ABC Janitors asserts, *inter alia*, that Santiago's "claims are barred by the applicable statute of limitations." (*Id.* at 539.)

On December 1, 2004, ABC Janitors filed a Motion to Dismiss Santiago's Third-Amended Complaint, asserting that the two-year statute

of limitations on Santiago's claim had expired on October 24, 2003. (J.A. Vol. I at 22; J.A. Vol. II at 531.) Santiago filed her Opposition to ABC Janitors' Motion to Dismiss on January 27, 2005, and on March 7, 2005, ABC Janitors filed its Reply to Santiago's Opposition to Motion to Dismiss Plaintiff's Third Amended Complaint. (J.A. Vol. II at 486.)

On September 7, 2005, A.B.C. Compounding moved for summary judgment. (J.A. Vol. II at 460.) On September 12, 2005, BC Supplies moved also for summary judgment. (J.A. Vol. I at 19.) On December 19, 2005, Santiago filed a Motion to Dismiss BC Supplies as a defendant, on the basis that she had erroneously identified BC Supplies as a distributor of Red Hot Solvent. (J.A. Vol. I at 426.) On December 23, 2005, the trial court granted Santiago's Motion and dismissed BC Supplies from the case. (*Id.* at 424.) On October 4, 2007, ABC Janitors filed a Motion to Join A.B.C. Compounding's Motion for Summary Judgment. (*Id.* at 13.)

On October 17, 2007, a hearing was held on all outstanding motions. (J.A. Vol. I at 13, 80-109.) On November 3, 2007, the trial court issued a Memorandum Opinion and Order on pending motions that the trial court considered·at the October 17, 2007 hearing. (J.A. at 70-79.) First, the trial court granted in part and denied in part VIHA's Motion for Partial Summary Judgment on the issue of whether Santiago's recovery is limited to fifty thousand dollars pursuant to title 29, section 87 of the Virgin Islands Code. The trial court granted the Motion for Partial Summary Judgment with respect to Santiago's slip and fall claim, but denied the Motion with respect to Santiago's claim for injuries resulting from inhaling the Red Hot Solvent fumes. Next, the trial court denied without prejudice ABC Janitors' Motion to Dismiss and Motion for Rule 60(b) Relief. The trial court noted that both Motions requested the same relief which was dismissal of Santiago's claims against ABC Janitors based on the expiration of the statute of limitations. The trial court concluded that the discovery rule was inapplicable to the underlying facts; therefore, the statute of limitations began to run on October 23, 2001, the date of Santiago's injury. Consequently, the statute of limitations expired two years thereafter on October 23, 2003, which was approximately ten months before Santiago filed her Third Amended Complaint against the defendants, including a claim against ABC Janitors for the first time. (J.A. at 75.) A.B.C. Compounding, Inc. filed a Motion for Summary Judgment which the trial court granted on the basis that Santiago's common law

causes of action against A.B.C. Compounding, Inc. are preempted by federal law. (*Id.*)

On January 18, 2008, ABC Janitors filed its Opposition to Plaintiff's Motion for Rule 54(b) Certification. (J.A. Vol. I at 62-68.) On March 13, 2008, ABC Janitors filed a Renewed Motion and Memorandum of Law in Support of Dismissal on Statute of Limitations Grounds. (*Id.* at 51-59.) The March 5, 2008 Affidavit of Judith Hinkel ("Hinkel"), ABC Janitors' Corporate Secretary and Treasurer, was filed in support of ABC Janitors' Reply to the Opposition to its Renewed Motion to Dismiss. Hinkel's Affidavit discloses three pertinent facts. First, it informs that the first notice ABC Janitors received of Santiago's lawsuit occurred on August 26, 2004, when ABC janitors was served with the Third Amended Complaint. (J.A. at 49.) Second, the Hinkel Affidavit informs that ABC Janitors is not connected with BC Supplies. (*Id.*) Third, the Hinkel Affidavit further informs that ABC Janitors is not connected with nor a part of BC Supplies for the following reasons: the two entities do not share any common officers, any common directors nor any common employees; the two entities do not share any common business space, any common addresses nor any common telephone numbers; and the two entities are separate and distinct entities. (*Id.* at 49-50.) On April 1, 2008, Santiago filed an opposition to ABC Janitors' Renewed Motion to Dismiss. Importantly, the record before us fails to disclose any affidavit, answers to interrogatories, depositions or sworn statements contradicting Hinkel's affidavit.

On June 11, 2008, the trial court entered an order, pursuant to Federal Rule of Civil Procedure 54(b), denying Santiago's Motion for Certification filed against defendant A.B.C. Compounding, Inc. (*Id.* at 36-37.) The same day the trial court entered an Order granting ABC Janitors' Renewed Motion to Dismiss and denying Santiago's Motion for Sanctions as moot. (*Id.* at 40.) Importantly, in this Order the trial court noted the following:

> There are no allegations in the Third Party Complaint that would support a finding of relation back. There is no evidence in the record before this [c]ourt that ABC Janitors received notice of pendency of this action within the period of time required by Federal Rule of Civil Procedure 15(c)(1)(C). Thus, dismissal is appropriate.

283

(*Id.* at 39) (footnote omitted). On November 13, 2008, the trial court entered an Order addressing ABC Janitors' Motion for Summary Judgment filed against VIHA and its Renewed Motion to Deem Conceded its Motion for Summary Judgment. The Order also addresses Santiago's Motion for Sanctions for Failure to Mediate filed against ABC Janitors. (*Id.* at 33-34.) The trial court granted ABC Janitors' Motion for Summary Judgment and denied the second and third Motions. (*Id.* at 34.)

On October 2, 2009, Santiago and VIHA entered into a joint settlement agreement and stipulation to dismiss with prejudice all claims between them. The Joint Stipulation was filed with the trial court on December 23, 2009. (*Id.* at 8.) On January 12, 2010, the trial court entered an Order approving the Joint Stipulation of Dismissal With Prejudice between Santiago and the VIHA. (*Id.* at 5.) On January 21, 2010, Santiago filed her timely appeal from the trial court's order granting summary judgment in favor of A.B.C. Compounding and the trial court's order dismissing Santiago's claim against ABC Janitors. (*Id.* at 7.)

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction "over all appeals arising from final judgments, final decrees or final orders of the Superior Court[.]" 4 V.I.C. § 32(a). On January 12, 2010, the Superior Court issued an Order dismissing this case with prejudice, which is a final order within the meaning of title 4, section 32(a) of the Virgin Islands Code that confers jurisdiction upon this Court to hear the appeal. *See V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008) ("A final judgment, decision, or order is one that ends the litigation on the merits. . .") (internal quotation marks omitted).

The trial court's grant of summary judgment is reviewed *de novo*. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 109 (2d Cir. 2001). All facts and inferences are viewed in the light most favorable to the non-moving party. *DuPont v. United States*, 508 F.3d 126, 132 (3d Cir. 2007). Summary judgment will be upheld "only if the admissible evidence establishes that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Milanese*, 244 F.3d at 109 (quoting FED. R. CIV. P. 56(c)).

## III. ISSUES

In her Notice of Appeal, Santiago asserts error with respect to several decisions and orders of the trial court:

- The denial of all pending discovery motions on October 31, 2007;
- The Order of October 31, 2007 granting A.B.C. Compounding's Motion for Summary Judgment;
- The Order of June 10, 2008 refusing to certify that Order for appeal;
- The Order of June 10, 2008 granting ABC Janitors of St. Croix Inc.'s Motion to Dismiss;
- The October 31, 2007 ruling on summary judgment motions when Defendants refused to respond to discovery requests.

(Notice of Appeal at 2; J.A. at 2.) However, in her appellate brief Santiago raises and addresses only two issues; namely:

A. Whether the Federal Hazardous Substances Act[, 15 U.S.C. § 1261 et seq.] ("FHSA") preempts Santiago's claims against Appellee A.B.C. Compounding; and

B. Whether the applicable statute of limitations bars Santiago's claims against ABC Janitors.

Therefore, I will only examine the two issues that Santiago argues in her brief; the issues she raised but did not argue are deemed to have been waived. *See United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008) and *Browne v. People of the Virgin Islands*, 55 V.I. 931, 933 (VI. 2011).

## IV. DISCUSSION

### A. The Federal Hazardous Substances Act Preempts Some, But Not All of Santiago's Claims Against A.B.C. Compounding Company Inc.

In Count II of the Third Amended Complaint, Santiago makes the following allegations:

### Count II

27. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 above and incorporates same as if more fully set out herein.

28. The Defendant[,] A.B.C. Compounding Company, was negligent in failing to adequately train or instruct the users of "Red Hot Sewer Solvent" on its proper application and use.

285

29. The Defendant[,] A.B.C. Compounding Company, was negligent in failing to adequately mark and identify on its container the proper use of the Red Hot Sewer Solvent.

30. The Defendant[,] A.B.C. Compounding Company, was negligent in failing to adequately mark and identify on its container the measures that should be taken to protect the public and occupants of residences where it is used of the dangers from the use of the "Red Hot Sewer Solvent."

31. The Red Hot Sewer Solvent was so toxic and so dangerous as to constitute a defective product.

32. The product was defectively designed or manufactured.

33. As a result of the negligent acts and omissions Plaintiff has been damaged as alleged herein.

(Third Amended Compl. 4-5; J.A. Vol. II at 546-47.) On appeal, Santiago argues that the trial court erred in granting A.B.C. Compounding's Motion for Summary Judgment because there are genuine issues of material fact concerning the classification of Red Hot Solvent as a household product. Specifically, Santiago argues that "the trial court erred as a matter of law when it characterized the [Red Hot Solvent] as a 'misbranded hazardous substance' " and thereby concluding that Santiago's common law negligence claims were preempted by the "FHSA." (Br. of Appellant 13.) In Count II Santiago asserts a number of tort claims against Appellee A.B.C. Compounding based on the alleged negligent training and instruction of its personnel, the alleged inadequate labeling of the product, and the alleged defective design and manufacture of the product. A.B.C. Compounding asserts that all of Santiago's claims against A.B.C. Compounding are preempted by the FHSA. (Br. of Appellee A.B.C. Compounding 10.) Additionally, for the first time on appeal, Appellee A.B.C. Compounding claims that Santiago lacks standing to assert her claim against it because her "only claim [is] that she was an innocent bystander[,] . . . not a user, nor a purchaser of the product." (Br. of Appellee A.B.C. Compounding 3.)

Because I conclude that the FHSA has not preempted all of Santiago's claims in the Third Amended Complaint, I would reverse the trial court's order granting summary judgment to A.B.C. Compounding.

## 1. Red Hot Sewer Solvent is a Hazardous Substance Within the Scope of the Federal Hazardous Substances Act

In granting Appellee A.B.C. Compounding's Motion for Summary Judgment, the trial court found that "a state law claim against a manufacturer is preempted if the product is a 'misbranded hazardous substance' under [Title 15,] § 1261(p) [of the United States Code,] to the extent that § 1261(p) is supplemented by regulations promulgated by the Consumer Product Safety Commission under the authority of § 1262(b)." (J.A. Vol. I at 77.) A.B.C. Compounding argues that Red Hot Solvent is a hazardous substance within the meaning of the FHSA, while Santiago vociferously argues that it is not. The classification of Red Hot Solvent as a hazardous product regulated by the FHSA is relevant to my determination of whether Santiago's claims against A.B.C. Compounding are preempted by the FHSA. Therefore, I will address this preliminary issue prior to considering Santiago's other argument on appeal.

The FHSA defines a "hazardous substance" as:

> Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, *or* (vi) generates pressure through decomposition, heat, or other means, *if* such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children.

15 U.S.C. § 1261(f)(1)(A) (emphasis added). It is indisputable that Red Hot Solvent is toxic, corrosive, an irritant, and is likely to cause substantial personal injury in its reasonably foreseeable use. This description is confirmed by the irrefutable facts regarding what occurred and the resulting personal injuries suffered by Santiago when Stanley poured the Red Hot Solvent into the sewer. (J.A. Vol. I at 116-17). Therefore, Red Hot Solvent is a hazardous substance that is subject to FHSA labeling requirements.

The FHSA regulates all labeling requirements of hazardous substances that come within the meaning of Title 15, section 1261(f)(1)(A). In order to conform to FHSA requirements, hazardous substances must bear a label:

> (1) which states conspicuously (A) the name and place of business of the manufacturer, packer, distributor or seller; (B) the common or

287

usual name of the chemical name (if there is no common or usual name) of the hazardous substance or of each component which contributes substantially to its hazard, unless the Commission by regulation permits or requires the use of a recognized generic name; (C) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic; (D) the signal word "WARNING" or "CAUTION" on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as "Flammable," "Combustible," "Vapor Harmful," "Causes Burns," "Absorbed Through Skin," or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Commission pursuant to section 1262 of this title; (G) instruction, when necessary or appropriate, for first-aid treatment; (H) the word "poison" for any hazardous substance which is defined as "highly toxic" by subsection (h) of this section; (I) instructions for handling and storage of packages which require special care in handling or storage; and (J) the statement (i) "Keep out of the reach of children" or its practical equivalent, or, (ii) if the article is intended for use by children and is not a banned hazardous substance, adequate directions for the protection of children from the hazard, *and*

(2) on which any statements required under subparagraph (1) of this paragraph are located prominently and are in the English language in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the label.

. . . .

15 U.S.C. § 1261(p)(1)-(2). Because Red Hot Solvent is a hazardous substance, its label must meet the requirements of Title 15, section 1261(p)(1)-(2) of the FHSA.

Hazardous substances further run the risk of being deemed "misbranded hazardous substances" under the FHSA. The FHSA defines a "misbranded hazardous substance" as:

*a hazardous substance* (including a toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted) *in-*

288

*tended, or packaged in a form suitable, for use in the household or by children*, if the packaging or labeling of such substance is in violation of an applicable regulation issued pursuant to section 1472 or 1473 of this title *or* if such substance, except as otherwise provided by or pursuant to section 1262 of this title, [otherwise] fails to bear a [conforming] label — .

15 U.S.C. § 1261(p) (emphasis added). The regulations at 16 C.F.R. § 1500.3(c)(10) supplement the meaning of "[h]azardous substances intended, or packaged in a form suitable, for use in the household" as follows:

(i) Hazardous substances intended, or packaged in a form suitable, for use in the household means any hazardous substance, whether or not packaged, that *under any customary or reasonably foreseeable condition of purchase, storage, or use may be brought into or around a house, apartment, or other place where people dwell, or in or around any related building or shed* including, but not limited to, a garage, carport, barn, or storage shed. The term includes articles, such as polishes or cleaners, designed primarily for professional use but which are available in retail stores, such as hobby shops, for nonprofessional use. . . . Size of unit or container is not the only index of whether the article is suitable for use in or around the household; *the test shall be whether under any reasonably foreseeable condition of purchase, storage, or use the article may be found in or around a dwelling.*

16 C.F.R. § 1500.3(c)(10) (emphasis added). Red Hot Solvent is a chemical that is manufactured for professional use in unclogging sewers. Stanley used the Red Hot Solvent to unclog the main sewer line that was situated approximately three feet from Santiago's kitchen door. Sewers are an integral part of one type of waste management system that removes sewage from homes and deposits it at treatment facilities. It is reasonably foreseeable that a chemical manufactured to unclog sewers would be used in or around a home, dwelling or residence. Here, the Red Hot Solvent was used near Santiago's residence, and from the trial record, it appears that this chemical is used often by VIHA to treat sewage problems near homes, residences and dwellings. Therefore, if Red Hot Sewer Solvent bore a deficient label, as a matter of law, it would be a misbranded hazardous substance.

Because I conclude that the trial court did not err in finding that Red Hot Solvent is subject to the FHSA's cautionary labeling requirements, I

must next determine to what extent Santiago's claims are viable when compared to those FHSA labeling requirements. (J.A. at 78.) *See Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244, 247 (3d Cir. 1999) (reviewing court "must nonetheless identify the domain expressly pre-empted.") (*quoting Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996)).

### 2. There is No Private Cause of Action under the FHSA; However, Santiago May Assert Common Law Tort Claims that Allege Violations of the FHSA

The FHSA was first enacted in 1960 to impose "nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use." *Milanese*, 244 F.3d at 109. Six years later, Congress considered amendments to the FHSA to address the complications that may arise from having the individual states regulate the labeling of certain hazardous substances. *Pennsylvania General Ins. Co. v. Landis*, 96 F. Supp. 2d 408, 414 (D.N.J. 2000). Recognizing the difficulty inherent in having fifty potentially different labeling requirements for one hazardous substance, Congress recommended "a limited preemption amendment which would encourage and permit states to adopt requirements identical with the federal requirements for substances subject to the Federal Act, and to enforce them to complement Federal enforcement." *Id.* (internal citations omitted). This fact, however, does not alter the origin of the FHSA as an Act developed to protect the public from hazardous substances.

To reiterate, in Count II of her Third Amended Complaint Santiago alleges the following:

27. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 above and incorporates same as if more fully set out herein.

28. The Defendant[,] A.B.C. Compounding Company, was negligent in failing to adequately train or instruct the users of "Red Hot Sewer Solvent" on its proper application and use.

29. The Defendant[,] A.B.C. Compounding Company, was negligent in failing to adequately mark and identify on its container the proper use of the Red Hot Sewer Solvent.

290

30. The Defendant[,] A.B.C. Compounding Company, was negligent in failing to adequately mark and identify on its container the measures that should be taken to protect the public and occupants of residences where it is used of the dangers from the use of the "Red Hot Sewer Solvent."

31. The Red Hot Sewer Solvent was so toxic and so dangerous as to constitute a defective product.

32. The product was defectively designed or manufactured.

33. As a result of the negligent acts and omissions Plaintiff has been damaged as alleged herein.

(Third Amended Compl. 4-5; J.A. Vol. II at 546-47.) Title 15, section 1261(n) of the United States Code defines "label" as "a display of written, printed, or graphic matter upon the immediate container of any substance or . . . directly upon the article involved . . . ." 15 U.S.C. § 1261(n). The purpose of such label is to communicate to users of the product the information mandated by the FHSA labeling regime. Although paragraph twenty-eight of the Complaint uses the words "train or instruct" and paragraphs twenty-nine and thirty use the words "mark and identify," I conclude that those words, within the context of section 1261(n) of the FHSA, allege defective labeling claims.

Santiago alleges the existence of a genuine issue of material fact concerning several aspects of the Red Hot label. Santiago challenges the visibility of the word "danger" and whether all possible hazards of Red Hot Solvent, including the danger posed by the traveling of its fumes, were communicated on its label. The FHSA requires that "the signal word 'DANGER' [be written] on substances which are extremely flammable, corrosive, or highly toxic[.]" 15 U.S.C. § 1261(p)(1). It also requires that "an affirmative statement of the principal hazard or hazards, such as 'Flammable,' 'Combustible,' 'Vapor Harmful,' 'Causes Burns,' 'Absorbed Through Skin,' or similar wording descriptive of the hazard" be stated on the label. *Id.* Furthermore, the FHSA requires such warnings to be "located prominently[,] . . . in the English language in conspicuous and legible type . . . ." *Id.* at § 1261(p)(2). The record on appeal contains a two-page document titled "Technical Information" that appears to have been printed from Taylor Labs' website. (J.A. at 442.) However, the actual label from the Red Hot Solvent was not included in the record on appeal. Nonetheless, after examining the allegations, I conclude that

Santiago's claims concerning the warning of hazards and prominence of the warning appear to be that the label failed to comply with the FHSA.

Next, Santiago challenges the adequacy of the precautionary measures described on the label, stating that the label lacked any warning that all doors, windows and other open cavities of dwellings should be closed prior to Red Hot Solvent's use. The FHSA requires that the label contain "precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Commission pursuant to section 1262 of this title[.]" *Id.* at § 1261(p)(1). Again, Santiago asserts a claim that the Red Hot Solvent label failed to comply with the FHSA. Additionally, Santiago objected to the lack of drawings depicting the safety equipment that should be worn when using Red Hot Solvent. In paragraphs twenty-eight, twenty-nine and thirty of Count II of the Third Amended Complaint, Santiago challenges the efficacy of the training, instructing, marking and identifying regarding the dangers of the Red Hot Solvent. Therefore, those claims are preempted by the FHSA to the extent that Santiago has alleged claims that exceed or otherwise differ from the FHSA requirements.

The FHSA specifically addresses state labeling requirements and other prohibited activities concerning hazardous substances. The FHSA prohibits states and their political subdivisions from regulating labeling requirements of hazardous substances in any manner that is not substantially similar to the FHSA labeling requirements. The "preemption provision" of the FHSA reads as follows:

> Except as provided in paragraphs (2) and (3), if a hazardous substance or its packaging is subject to a cautionary labeling requirement . . . designed to protect against a risk of illness or injury associated with the substance, *no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement* applicable to such substance or packaging and *designed to protect against the same risk of illness or injury* unless such cautionary labeling requirement is identical to the labeling requirement under section 2(p) or 3(b) [subsec. (p) of this section or section 1262(b) of this title].

Act of Nov. 3, 1966, Pub. L. 89-756, § 4(a), 80 Stat. 1303, *renumbered and amended*, Act of Nov. 6, 1969, Pub. L. 94-284, § 17(a), 90 State. 510, *reprinted at* 15 U.S.C. § 1261 Note (b)(1)(A) ("Effect upon Federal and State

Law") (emphasis added). Stated succinctly, "[t]he FHSA preempts any state cause of action that would impose a labeling requirement 'different from the requirements in the FHSA or the regulations promulgated thereunder.' " *Mwesigwa v. DAP, Inc.*, 637 F.3d 884, 887 (8th Cir. 2011). Therefore, Santiago's claims against A.B.C. Compounding are prohibited to the extent that she relies upon or advocates for labeling requirements different from those contained in the FHSA. The trial court correctly concluded that the FHSA lacks a private remedy (J.A. at 76); however, this is not determinative as to whether a cause of action can be maintained based on FHSA violations.

First, whether a federal statute provides a private cause of action must be determined on a case by case basis using the standards set forth by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975), and as redefined by *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1979) and *Thompson v. Thompson*, 484 U.S. 174, 108 S. Ct. 513, 98 L. Ed. 2d 512 (1988). The factors that determine whether a private cause of action exists under federal law that does not expressly provide for one initially were: 1) whether the plaintiff is one of the class for whose benefit the statute was enacted, 2) whether there is legislative intent to provide a private remedy, 3) whether it is consistent with the legislative scheme to imply a private remedy, and 4) whether the cause of action is one that is traditionally relegated to state law in an area that is basically of concern to the states. *Cort v. Ash*, 422 U.S. at 78. Eventually, the U.S. Supreme Court reconstrued these principles, and made legislative intent the sole determinative factor. *Touche Ross & Co.*, 442 U.S. at 568, 575-76; *see also Thompson*, 484 U.S. at 189 (Scalia, J., commenting in concurring with the judgment that "we effectively overruled the *Cort v. Ash* analysis in *Touche Ross & Co.* . . . , and *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 18, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979), converting one of its four factors (congressional intent) into *the determinative factor*, with the other three merely indicative of its presence or absence") (emphasis added).

The majority of courts that have considered the issue of whether there exists a private cause of action under the FHSA have consistently found that there is no private cause of action, after analyzing the federal statute against the principles established by the U.S. Supreme Court. This issue has been addressed predominantly at the District Court level. The first federal appellate court to have addressed this matter was the Second

293

Circuit Court of Appeals in *Riegel Textile Corp. v. Celanese Corp.*, 649 F.2d 894 (2d Cir. 1981). After applying the *Cort* principles, the *Riegel* court found that the FHSA did not imply a private cause of action. 649 F.2d at 903. In rejecting the plaintiff's contention that there is a private cause of action under the FHSA the Second Circuit held that "implying a private right of action under section 1263 [of the FHSA] would be inconsistent with the statutory scheme[.]" *Id.* at 902.

Although the *Riegel* court rejected a private right of action under the FHSA by utilizing a *Cort* analysis which has since been refined by the U.S. Supreme Court, subsequent federal cases have also rejected a private cause of action under the refined *Cort* principles.

The United States Court of Appeals for the Fifth Circuit has concluded that a private cause of action is lacking under the FHSA. The Fifth Circuit opined that "the FHSA does not create a private cause of action. Rather, the FHSA vests the CPSC with the authority to enforce federal labeling requirements." *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 374 (5th Cir. 2002).

A number of federal district courts have aligned with the holdings of the *Riegel* and *IQ Products* courts in concluding that there is no private cause of action under the FHSA. *See Christenson v. St. Mary's Hosp.*, 835 F. Supp. 498, 501 (D. Minn. 1993); *Robinson v. Rooto Corp.*, 617 F. Supp. 2d 748, 751 (W.D. Tenn. 2008); *Greenawalt v. Philip Rosenau Co.*, 471 F. Supp. 2d 531, 534 (E.D. Pa. 2007); *Gibson v. Wal-Mart Stores, Inc.*, 189 F. Supp. 2d 443, 449 (W.D. Va. 2002) ("This court finds the reasoning of the Second Circuit persuasive and hereby adopts the holdings of that court. The FHSA provides for no private right of action[.]"); *Pennsylvania Gen. Ins. Co. v. Landis*, 96 F. Supp. 2d 408, 414 (D.N.J. 2000) (stating that "[a]lthough the question of whether a private right of action exists under the FHSA is one of first impression in this district, other courts considering the issue have held that the FHSA does not provide a private judicial remedy to a party injured by the introduction of a misbranded hazardous substance into the stream of commerce").

The great weight of the authority on this matter leads me to conclude that there is no private cause of action under the FHSA. However, there is some persuasive authority that suggests that a state based tort action may lie for failure to comply with the labeling requirements of the FHSA. For instance, after recapitulating the holding in *Riegel*, the Second Circuit held that "[a]lthough there is no federal private right of action under the

FHSA, a state negligence claim lies for failure to comply with the federal, FHSA-mandated labeling requirements." *Milanese*, 244 F.3d at 110. Similarly, the Fourth Circuit has opined that although the FHSA does not have a private right of action, "in an area of limited Congressional preemption such as the FHSA, a common law tort action based upon failure to warn may only be brought for noncompliance with existing federal labeling requirements." *Moss v. Parks Corp.*, 985 F.2d 736, 740 (4th Cir. 1993). Most recently, the Eighth Circuit has opined that a plaintiff may bring a state-based failure to warn claim based on the theory that a product failed to comply with the FHSA, so long as the theory does not include warning requirements not prescribed by the FHSA. *Mwesigwa*, 637 F.3d at 887.

Importantly, the United States Third Circuit Court of Appeals ("Third Circuit") appears to approve of the conclusion that a state negligence action can be brought by a plaintiff for failure to comply with the FHSA. The federal district court in *Landis* held that while the FHSA does not provide a party with a private right of action, "a state common law claim based on a failure to properly label under the FHSA is not automatically preempted by the Act." The Third Circuit affirmed this holding without opinion. *See Landis*, 96 F. Supp. 2d at 414-15, *aff'd*, 248 F.3d 1131 (3d Cir. 2000) (Table, No. 00-1731). This provides a strong indication that the Third Circuit is inclined to agree with the majority of courts on this issue.

I further find compelling the holdings of these cases that a state tort claim like negligence may exist only for violation of the FHSA, considering the U.S. Supreme Court's holding that a private cause of action can be maintained pursuant to federal legislation that does not provide for a private remedy where state law provides a remedy for violation of the federal legislation. *See Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 442, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005) ("Nothing in the text of [the Federal Insecticide, Fungicide, and Rodenticide Act] FIFRA would prevent a [s]tate from making the violation of a federal labeling or packaging requirement a state offense, thereby imposing its own sanctions on pesticide manufacturers who violate federal law.").[1]

---

[1] Although the *Bates* court allows for a private cause of action for plaintiffs and allows states to impose sanctions for failure to comply with the FIFRA, this is not determinative of whether these rights exist under the FHSA, because they are two completely separate and distinct statutes. The U.S. Supreme Court mandated that whether a private right of action exists under

A most recent U.S. Supreme Court decision further buttresses my conclusion that the FHSA affords a state tort right of action. In *Williamson v. Mazda Motor of America, Inc.*, 131 S. Ct. 1131, 1139-40, 179 L. Ed. 2d 75 (2011), the U.S. Supreme Court opined that a state common law tort action was not preempted by federal regulation, where the state action did not stand as an obstacle to a significant objective of the federal regulation. Accordingly, Santiago cannot maintain a private cause of action for violation of the provisions of the FHSA. However, to the extent that Santiago asserts a local or common law tort cause of action that provides a remedy, such as negligence or failure to warn, Santiago may assert such claims for violation of the FHSA.

If A.B.C. Compounding violated the FHSA, and Santiago was tortuously injured because of these violations, Santiago may seek redress for her injuries. Count II of Santiago's Third Amended Complaint asserts common law tort claims for negligence, defective design, and manufacture of Red Hot Solvent, among other claims. Santiago, consistent with the historical purpose of the FHSA, has alleged state law claims of common law torts that would entitle her to a remedy for violation of the FHSA. This finding is buttressed by the pronouncements of the Restatement of Torts, which provides:

### Noncompliance and Compliance with Product Safety Statutes or Regulations

In connection with liability for defective design or inadequate instructions or warnings:

(a) a product's noncompliance with an applicable product safety statute or administrative regulation renders the product defective with respect to the risks sought to be reduced by the statute or regulation; and

(b) a product's compliance with an applicable product safety statute or administrative regulation is properly considered in determining

---

federal provisions depends on the particular provision's legislative intent, and must be considered on a case by case basis. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979) (holding that "[w]hile some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, [] what must ultimately be determined is whether Congress intended to create the private remedy.").

whether the product is defective with respect to the risks sought to be reduced by the statute or regulation, but such compliance does not preclude as a matter of law a finding of product defect.

RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 4.

Accordingly, I conclude that the FHSA does not create a private federal cause of action for the violation of its provisions. However, Santiago may assert state based tort claims resulting from violations of the labeling requirements of the FHSA. Specifically, Santiago will have a cause of action if she can demonstrate a causal relationship between A.B.C. Compounding's alleged negligent failure to comply with the FSHA and her injuries. The trial court would, however, exceed its jurisdiction to hear any claims against A.B.C. Compounding that are in conflict with the FHSA requirements, or any claims of a private right of action resulting directly from failure to comply with the FHSA.

In her Third Amended Complaint, Santiago alleges three claims of negligence and two claims of defective product against A.B.C. Compounding. Virgin Islands common law allows for tort actions on these allegations.[2] *See* RESTATEMENT (SECOND) OF TORTS § 281 (Statements of the Elements of a Cause of Action for Negligence) and § 398 (chattel made under dangerous plan or design). *See also* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1 (Liability of Commercial Seller or Distributor for Harm Caused by Defective Products) and § 4 (Noncompliance and Compliance with Product Safety Statutes and Regulations). Accordingly, Santiago's allegations are claims where remedies exist under local common law tort actions, and thus Santiago may assert them.

### B. Santiago's Claims Against ABC Janitors are Barred by the Two-Year Statute of Limitations

Santiago argues that the trial court erred in granting ABC Janitors' Motion to Dismiss on the basis that the two-year statute of limitations

---

[2] Although there are no specific Virgin Islands regulations pertaining to negligence based tort claims, the American Law Institute's Restatement of the Law is the applicable authority in accordance with 1 V.I.C. § 4, which states that:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

imposed by 5 V.I.C. § 31(5)(A) had expired. Specifically, Santiago alleges that her claim against ABC Janitors was not barred by the statute of limitations because the "discovery rule" is applicable to her case; therefore, the commencement date for the statute of limitations was delayed. (Br. of Appellant 24.) For the reasons explicated below, I disagree.

### 1. The Discovery Rule does not Toll the Onset of the Statute of Limitations on Santiago's Claim against ABC Janitors Because Santiago Possessed Knowledge of All Relevant Facts about her Injuries on the Date that She Was Exposed to the Red Hot Solvent

Claims accrue for statute of limitations purposes under 5 V.I.C. § 31(5)(A) on the date of the event or accident causing the harm, but it has long been recognized that this normal principle is not applicable if "the injury or its cause is not immediately evident to the victim." *Joseph v. Hess Oil*, 867 F.2d 179, 182 (3d Cir. 1989) (citing cases discussing the "discovery rule" applicable in such unusual circumstances). Santiago relies on the discovery rule applied by the District Court's decision *In re Tutu Wells Contamination Litigation*, 909 F. Supp. 980 (D.V.I. 1995), to support the contention that her claim against ABC Janitors is not barred by the statute of limitations.

Santiago's argument fails because the rule of law in *In re Tutu Wells* is inapplicable to the facts in this case. Considering the circumstances surrounding the kinds of injuries in that case, the District Court in *In re Tutu Wells* adroitly carved out a narrow exception to the discovery rule applicable to environmental contamination cases. *Id.* at 986. The special exception carved out by *In re Tutu Wells* is inapplicable to personal injury litigation as in this case. (*See* J.A. at 74.)

Furthermore, the present case is not one of those exceptional cases where the injury or its cause was not immediately known to the victim, as is required for application of the "discovery rule" to the statute of limitations. Moreover, even if this Court were to apply the discovery rule analysis, it would not extend Santiago's time to sue beyond the two year statute of limitations by even a single day, because she was immediately aware of both her injuries and the cause of her injuries on October 23, 2001.

Essentially, the discovery rule operates to delay the time when the statute of limitations on a plaintiff's claim begins to accrue. "Under the

rule, the statute of limitations will start to run at the time that two conditions are satisfied: (1) when the plaintiff knew or should have known that he suffered harm and (2) when the plaintiff knew or should have known the cause of his injury." *Tutu Wells*, 909 F. Supp. at 985 (emphasis in original omitted); *see also Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007) ("Under this rule, a statute of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of his claim.") and *S.E.C. v. Gabelli*, 653 F.3d 49, 59 (2d Cir. 2011) ("Under the discovery rule, the statute of limitations for a particular claim does not accrue until that claim is discovered, or could have been discovered with reasonable diligence, by the plaintiff"). Santiago's statement informs that she knew she was injured immediately after Stanley began to pour the Red Hot Solvent into the main sewer line outside her home. Santiago's ordeal supports this conclusion because she immediately began to experience the harm arising from injuries for which she sought exigent medical treatment from a doctor on the same day of the incident and the same day that those injuries occurred. Subsequently, she was treated by several doctors for her medical conditions and injuries allegedly caused by Stanley using the Red Hot Solvent in proximity to her home.

Santiago misconstrues the second prong of the discovery rule, arguing that "the statute of limitations began to accrue on January 31, 2003, the date Santiago learned that the actions of ABC Janitors could have caused her injuries[.]" (Br. of Appellant 25.) The second prong of the discovery rule provides that the statute of limitations shall begin to run when the injured party "knew or should have known *the cause* of her injury." *Tutu Wells*, 909 F. Supp. at 985. Therefore, in this case, the statute of limitations began to run on October 23, 2001 when Santiago knew or should have known that the cause of her injury was the Red Hot Solvent.

The following facts demonstrate why the deferred accrual principles of the discovery rule do not result in any extension of time in Santiago's circumstances. Santiago knew that the Red Hot Solvent was the cause of her injuries because she observed Stanley pour the chemical into the main sewer line outside her door and immediately thereafter sustained her injuries. The same day, Santiago visited Dr. Williams' office and informed him as to what had transpired. Upon her visit, Dr. Williams treated Santiago for chemical burns. Additionally, during her deposition testimony Santiago stated the following: "when [Stanley] was pouring, he

poured it the second time, and I smelt [sic] it. I took a look, I saw it said Red Hot Solvent, what ever [sic] it was." (*Id.* at 144-45.) Elsewhere in her deposition testimony, Santiago stated that she immediately "smell[ed a] bad odor when Stanley began to pour the Red Hot Sewer Solvent into the main sewer pipe outside her home." (J.A. at 116.) Also, Santiago stated that Stanley told her to close the door to her home, but that she had already began to itch, burn and experience difficulty breathing. (*Id.*) Santiago hurriedly exited her residence through the front door where she regurgitated. (*Id.*) Moreover, Santiago admits that on January 31, 2003, nearly ten months prior to the two-year anniversary of her accident, VIHA disclosed in its January 30, 2003 response to discovery requests from Taylor Labs Inc., that ABC Janitors was the distributor or seller of Red Hot Solvent.

Contrary to Santiago's assertion, and regardless of the fact that this case does not concern environmental contamination, the discovery rule as articulated in *Tutu Wells* does not delay the onset of the statute of limitations in this case. The facts enumerated in Santiago's complaint unequivocally reveal that the discovery rule is inapplicable to Santiago's case because Santiago knew that she was injured, and she knew the cause of her injuries as of October 23, 2001.

Lastly, the day of the above occurrence was the day the statute of limitations began to run. Therefore, Santiago's argument that the statute of limitations is tolled according to the legal principles enunciated in *Tutu Wells* is meritless as applied under these particular facts.

It is Santiago's duty and obligation to discover the identity of all parties responsible for the design, development, supply and use of Red Hot Solvent, as she deemed pertinent to the causes of action she wished to file.

### 2. The Relation Back Doctrine Does Not Toll the Onset of the Statute of Limitations

Santiago argues that her Complaint against ABC Janitors was timely filed because it relates back to the Complaint she previously filed against BC Supplies. (Br. of Appellant 24.) Santiago further argues that she was deprived of the opportunity to determine, through discovery, whether ABC Janitors had knowledge of her Complaint within the time permitted for the filing of the original Complaint. (Br. of Appellant 27.) Therefore, Santiago urges this Court to vacate the trial court's findings of fact and remand this case with a directive to the trial court to allow her to conduct

discovery, concerning whether ABC Janitors had the requisite notice for the relation back doctrine to toll the onset of the statute of limitations.

Relation back is governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15 provides, in pertinent part:[3]

### (c) RELATION BACK OF AMENDMENTS

(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1) (emphasis in original). Santiago alleges that, based on Rule 15(c)(1)(C), the statute of limitations for her complaint against ABC Janitors relates back to her complaint against BC Engineering. Concerning service of the summons, Rule 4(m) of the Federal Rules of Civil Procedure provides in pertinent part:

(m) TIME LIMIT FOR SERVICE. If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its

---

[3] This federal court rule is applicable to the Virgin Islands Superior Court by virtue of SUPER. CT. R. 7 which states that: "[t]he practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence." As there are no Superior Court Rule applicable to the amendment of pleadings, FED. R. CIV. P. 15 governs.

301

own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). However, in order for Santiago's Third Amended Complaint against ABC Janitors to relate back to her original complaint against BC Engineering, Santiago must prove that within 120 days after the original complaint was filed that ABC Janitors received sufficient notice of the filing of the complaint so that it would not be prejudiced in defending the merits of the lawsuit, and that ABC Janitors knew or should have known that but for Santiago's mistake concerning ABC Janitor's identity, it would be named as a defendant.

Both prongs of Rule 15(c)(1)(C) must be satisfied in order for a complaint to relate back. Because the parties dispute only the second prong, which is whether ABC Janitors had the requisite knowledge within the Rule 4(m) period, I will address the second prong first. The Supreme Court of the United States has held that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski v. Costa Crociere S.P.A.*, 560 U.S. ___, ___, 130 S. Ct. 2485, 2490, 177 L. Ed. 2d 48 (2010). Santiago bases her relation back argument on the claim that "[i]t is reasonable to assume that ABC Janitors and VIHA have a close business relationship and that the VIHA notified ABC Janitors of the institution of this action." (Br. of Appellant 26.) Therefore, Santiago deduces that the trial court abused its discretion when it granted summary judgment in favor of ABC Janitors without affording her time to conduct discovery on the issue of whether ABC Janitors had notice of the filing of her lawsuit. (*Id.* at 27.) In response, ABC Janitors asserts that Santiago has not proven that ABC Janitors received either actual or constructive notice of the lawsuit within the Rule 4(m) time period and further emphasized that it did not have such knowledge within the Rule 4(m) period. (*See* Br. of Appellee at 20-26.)

In *Krupski*, plaintiff Wanda Krupski tripped on board a cruise ship and fractured her femur. The carrier and operator of the ship was Costa Crociere, while Costa Cruise Lines was its "North American sales and marketing agent." *Krupski*, 130 S. Ct. at 2490-91. The plaintiff filed suit

against Costa Cruise Lines in the District Court for the Southern District of Florida. Following the expiration of the statute of limitations period, Costa Cruise Lines informed the plaintiff that Costa Cruise Lines was not the proper defendant and that Costa Crociere was the carrier and operator. *Id.* The District Court of Florida allowed the plaintiff to amend her complaint and serve Costa Crociere. However, Costa Crociere argued that the filing of the amended complaint was time barred because it did not relate back under FED. R. CIV. P. Rule 15(c). The reasoning of the District Court of Florida was summarized by the United States Supreme Court:

> Because Costa Cruise informed Krupski that Costa Crociere was the proper defendant in its answer, corporate disclosure statement, and motion for summary judgment, and yet Krupski delayed for months in moving to amend and then in filing an amended complaint, the court concluded that Krupski knew of the proper defendant and made no mistake.

*Id.* at 2492. The Eleventh Circuit affirmed. In pertinent part, the Eleventh Circuit concluded that Krupski chose to sue Costa Cruise Lines rather than Costa Crociere because her passenger ticket "clearly identified Costa Crociere as the carrier, the court stated Krupski either knew or should have known of Costa Corciere's identity as a potential party." *Id.* In reversing, the Supreme Court of the United States first clarified that the proper question under Rule 15(c)(1)(C)(ii) is "whether [the defendant named in the amended complaint] knew or should have known that it would have been named as a defendant but for an error." *Id.* at 2493.

In determining whether Costa Crociere knew or should have known that it would be named as a defendant in the original complaint, the Supreme Court of the United States considered a variety of factors. The factors considered include: (1) that the defendant in the original complaint and the defendant named in the amended complaint were represented by the same attorney; (2) the trial court's uncontested finding that the defendant named in the amended complaint had constructive notice of the complaint within the period specified by Rule 4(m); (3) the clarity of the complaint, which indicated that the plaintiff intended to sue the company that bore certain specified responsibilities; (4) the misunderstanding, concerning the identity of the proper defendant, that was apparent on the face of the complaint; (5) the information on her ticket communicated to the plaintiff which would be relevant in determining the identity of the

proper party to name as a defendant in a lawsuit; (6) the strategy that plaintiff may have been pursuing by suing the defendant named in the original complaint; (7) that the entities were related and had similar names; (8) the contribution to passenger confusion concerning the identity of the proper party to be named as a defendant; and (9) the awareness of the defendant named in the amended complaint concerning the confusion between its name and that of the defendant named in the original complaint, as evidenced by a prior court ruling in an unrelated case on the same Rule 15(c)(1)(C)(ii) issue. *Id.* at 2491, 2497-98. Finally, in rendering its decision, the United States Supreme Court in *Krupski* enunciated the rule that "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 2496.

In applying the *Krupski* factors to this case, I would conclude that the trial court did not abuse its discretion in finding that the Third Amended Complaint filed against ABC Janitors does not relate back to the Original Complaint filed against BC Supplies. First, BC Supplies and ABC Janitors are not represented by the same counsel. Second, it is important to note that the *Krupski* Court declined to state whether the requisite notice for relation back under Rule 15(c)(1) must be actual or constructive, and I do not make that determination today. It is sufficient to conclude the following: The record on appeal lacks any indication that ABC Janitors had actual or constructive notice of Santiago's lawsuit. Santiago asserts nothing more than a bald assertion that it is reasonable to conclude that ABC Janitors, one of the myriad of suppliers and distributors of the VIHA, a local governmental agency, had received notice of her lawsuit. ABC Janitors stridently and vehemently objects to any allegation that it had constructive notice and argues that it in fact did not have actual or constructive notice of Santiago's lawsuit prior to August 2004. Third, the allegations contained in Count II of Santiago's Second and Third Amended Complaints were not contained in Santiago's original complaint. The Second and Third Amended Complaints clearly indicate that Santiago intended to sue the entity that distributed the "dangerous" or "dangerous and defective" product and the entity that "failed to properly warn of the dangerous condition" and failed "to give proper instructions as to its use." Fourth, the record does not reveal any

apparent misunderstanding concerning the identity of the proper defendant. Santiago originally named BC Supplies as the VIHA's supplier and distributor of the Red Hot Solvent. There was no apparent confusion as to whether BC Supplies or ABC Janitors was the proper defendant. Obviously, Santiago was not diligent in ascertaining the identity of VIHA's supplier and distributor for Red Hot Solvent, which was not due to any confusion between the identities of BC Supplies and ABC Janitors. Importantly, BC Supplies and ABC Janitors do not have similar names, do not have similar addresses, do not have the same officers or the same employees. In VIHA's January 31, 2003 Responses to Interrogatories, ABC Janitors was the only entity named as the supplier or distributor of Red Hot Solvent. Fifth, on January 31, 2003, accurate information was communicated to Santiago by the VIHA, concerning the proper identity of its supplier and distributor for the Red Hot Solvent, which information Santiago's counsel chose to ignore. Sixth, I can conceive of no legal strategy that Santiago was pursuing by naming a party that she would later dismiss because it was not the VIHA's distributor of Red Hot Solvent. Moreover, an affidavit by ABC Janitors' corporate secretary, Judith Hinkle, reveals that there is no relationship between BC Supplies and ABC Janitors. (J.A. at 49-50.) Furthermore, Santiago had the opportunity to conduct additional discovery concerning the relationship between ABC Janitors and BC Supplies. The trial court had granted Santiago an additional fifteen days beyond the close of discovery to supplement her opposition to ABC Janitors' Motion for Summary Judgment. Seventh, Santiago does allege that ABC Janitors refused to participate in discovery. However, the record fails to reveal and Santiago does not allege that ABC Janitors, or any other party, caused or contributed to confusion concerning the identity of the proper party or defendant. Importantly, Santiago admits that the VIHA disclosed ABC Janitors as its supplier of the Red Hot Solvent on January 31, 2003, which was before the expiration of the statute of limitations. Eighth, the record on appeal reveals no reason why ABC Janitors was or should have been aware that it should have been named in Santiago's original Complaint rather than BC Supplies. Therefore, in applying the *Krupski* factors to this case, I conclude that the trial court did not abuse its discretion in finding that Santiago's Third Amended Complaint against ABC Janitors did not relate back to her original complaint.

## V. CONCLUSION

The trial court's dismissal of the claims asserted by Santiago in the Third Amended Complaint, which involves common law torts, should be reversed and the case remanded for further proceedings consistent with this opinion. The discovery rule does not operate to delay the onset of the statute of limitations because Santiago knew of her injuries the same day she was injured. Santiago has failed to demonstrate that her complaint against ABC Janitors relates back to her complaint against BC Supplies because she has failed to submit evidence to substantiate her allegation that ABC Janitors had knowledge that it was an intended party to this lawsuit within the time provided by Rule 4(m) or within the two year statute of limitations for tort actions.

BRADY, *Designated Justice*, concurring. In the underlying case to this appeal, the Plaintiff settled her claims with the undisputed tortfeasor, the Virgin Islands Housing Authority (VIHA), whose employee used the Red Hot Solvent which caused proven injuries to the Appellant. As made clear in the majority opinion by Chief Justice Hodge, the two issues presented by the Appeal were two orders by the Trial Court relating to the remaining Defendants: the first granting ABC Janitor's motion to dismiss the complaint and the second granting ABC Compounding's motion for summary judgment. I concur with the majority opinion's resolution on both of the issues raised on appeal, specifically by affirming the order granting dismissal of ABC Janitors and reversing the Superior Court's grant of ABC Compounding's motion for summary judgment and remanding it to the Superior Court for further action. I write separately to highlight a portion of the majority opinion, set out at footnote 11, which I believe is a critical, and incredibly helpful, part of the burgeoning jurisprudence of the Supreme Court.

At footnote 11 on page 275, the majority opinion states:

> Superior Court Rule 7 provides that '[t]he practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Civil Procedure.' SUPER. CT. R. 7. This Court has held, however, that, when a Superior Court rule governs the same subject matter as a federal rule, the federal rule cannot apply to Superior Court proceedings pursuant to Superior Court Rule 7 when application of the federal rule would render the Superior Court rule "wholly superflu-

ous." *See Corraspe v. People*, 53 V.I. 470, 482-83 (V.I. 2010). Accordingly, pursuant to this Court's decision in *Corraspe*, Superior Court Rule 8, and not Federal Rule of Civil Procedure 15, should govern amendments to complaints, even if Superior Court Rule 8 provides a less comprehensive framework than Federal Rule of Civil Procedure 15. However, since Superior Court Rule 8 does not address the standard for the relation back of amendments, we may consider the doctrines developed under the federal rule in determining this issue.

Footnote 11, Maj. Op. at 275.

This short but explicit discourse regarding the treatment of the Federal Rules of Civil Procedure and the Rules of the Superior Court are of particular importance to the Judges and Magistrates of the Superior Court. I interpret it as investing the Superior Court of the Virgin Islands with greater latitude when confronted by a choice of which of the two sets of rules — federal or territorial — to apply to any case which requires the court to use one or the other based on the facts and issues of the case. I am pleased, indeed honored, to concur in this well-crafted precedent which will certainly be of great value to both the Bench and the Bar of this Territory.